## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HARLEYSVILLE LAKE STATES ) <br> INSURANCE COMPANY, as subrogee of ) <br> PREMIUM ESPRESSO CORP. d/b/a ) <br> LAVAZZA; NATIONAL SURETY ) <br> CORPORATION, as subrogee of ROTI ) <br> MEDITERRANEAN GRILL; and VIGILANT ) <br> INSURANCE COMPANY, as subrogee of ) <br> CORBOY & DEMETRIO, P.C., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HILTON TRADING CORPORATION d/b/a ) <br> ACCUBANKER USA; OFFICE DEPOT, INC.; ) <br> and BANK OF AMERICA, N.A., ) <br> ) <br> Defendants. ) | Case No: 12-cv-08135 |

### BANK OF AMERICA, N.A.'S OPPOSITION TO DEFENDANT HILTON TRADING CORP'S MOTION FOR LEAVE TO FILE CROSS-CLAIM

Defendant, Bank of America, N.A. ("BANA"), through is attorneys, states as follows as its Opposition to Defendant's, Hilton Trading Corp., d/b/a Accubanker USA ("Hilton"), Motion for Leave to File Cross-Claim for Contribution Against Bank of America N.A.(the "Motion"):

### PROCEDURAL BACKGROUND

This matter is one of eight (8) suits (the "Fire Suits")[1] brought by or on behalf of tenants in the high rise office building at 33 North Dearborn Street, Chicago, Illinois. All of the Fire Suits seek the recovery of property and other alleged damages that resulted from the March 5, 2011 fire that broke out in the BANA Banking Center on the first floor of that building (the "Fire"). The Fire has been identified by all of the Fire Suit plaintiffs as originating in the UV

---

[1] Seven (7) of these suits are pending in this Court: Case No. 11-cv-4559; Case No. 12-cv-6400; Case No. 12-cv-7052; Case No. 12-cv-8135; Case No. 12-cv-9990; Case No. 13-cv-1707; and Case No. 13-cv-5497. The eighth is pending in the Circuit Court of Cook County Illinois, as Case No. 2013 L 2380.

1

light counterfeit bill detector located at Teller Station No. 2 of the Banking Center. The UV light has further been identified by Office Depot and nearly all of the Fire Suit plaintiffs as an Accubanker D62 unit, which was, at least, branded, developed and sold by Hilton.[2]

Hilton has filed, a minimum of twelve (12) answers to the various pleadings in the Fire Suits.[3] None of the 12 Answers, which were filed over a three (3) year period, contain a cross-claim or any other affirmative claim against BANA. In two of those cases (Case Nos. 12-cv-6400 and 12-cv-7052), the applicable statute of limitations has likely run and any contribution claim that Hilton may have in those actions is probably barred. *See* 735 ILCS 5/13-204.

The Fire Suits pending in this Court have been assigned for supervision of discovery to Judge Milton I. Shadur, who, in turn, referred discovery supervision to Magistrate Judge Sidney Schenkier. Magistrate Judge Schenkier issued an Order closing fact discovery on liability as of June 2, 2014, but allowed the parties until July 31, 2014 to complete the deposition of Carlos-Andres Gonzalez and exempted foreign discovery from the discovery cut-off. (ECF Nos. 66 & 71, Case No. 11-cv-04559.) The parties have, by agreement, refrained from fact discovery on damages. On August 27, 2014, the parties were ordered, by September 29, 2014, to file a joint report outlining a schedule for expert discovery and to address with the district judges if the cases were to be consolidated for trial and how the trial(s) would proceed. (ECF No. 73, Case No. 11-cv-04559.) This deadline was postponed, as a requested accommodation by Hilton's new counsel, until October 29, 2014 with a further status conference set for November 12, 2014. (ECF No. 83, Case No. 11-cv-04559.)

---

[2] Case Nos. 12-cv-6400 and 2013 L 2380 are the only Fire Suits not to name Hilton as a defendant. The plaintiffs in Case No. 12-cv-6400 and Hilton share a common insurer – Travelers.

[3] *See* ECF No. 11, Case No. 11-cv-4559; ECF Nos. 27, 45, Case No. 12-cv-06400; ECF Nos. 18, 19, Case No. 12-cv-7052; ECF Nos. 13, 57, Case No. 12-cv-8135; ECF No. 31, Case No. 12-cv-9990; ECF Nos. 11, 25, Case No. 13-cv-1707; and ECF No. 6, Case No. 13-cv-5497.

Hilton's proposed cross-claim is the latest in its line of seemingly endless defenses. Initially, Hilton denied that the UV light at Teller Station No. 2 was its product, because it purportedly lacked certain identifying characteristics. After significant and lengthy discovery on this issue, Hilton deemphasized this defense and asserted that the Mag-Tek check reader, not the UV light, was the origin of the Fire. Yet, Hilton did not assert any claims against Mag-Tek in any of the Fire Suits. Again, after extensive discovery, including multiple x-ray, CT and evidentiary exams, Hilton appears to have abandoned this defense. Hilton, from time to time, has also asserted that it was only a distributor of the D62 and thus not subject to liability. It is unclear whether Hilton will pursue this defense. Now, Hilton files the present Motion seeking to add cross-claims.

## Summary of Response

The Motion is barely two pages in length and fails to identify the controlling law or meet the heavy burden required to add a new claim at this late stage. Hilton cites no new facts or other circumstances justifying the addition of new claims nearly two (2) years after its Answer was filed and four (4) months after discovery was closed. Instead, Hilton asserts that these claims are timely, since its new counsel promptly sought leave after being retained – a proposition with no support. Hilton also asserts that no new proofs will be required, even though it has now taken on the burden of proving BANA's negligence. Much like the Court in Hilton's own case, *Sound of Music Co. v Minnesota Mining and Manufacturing Co.*, 477 F.3d 910, 922-23 (7th Cir. 2007), Hilton's request for leave should be denied.

Hilton asserts contributory negligence in that BANA allegedly left the UV light on for too long a period of time and failed to have adequate fire detection or protection systems in place. No detail, despite years of discovery, is provided by Hilton as to these allegations or its

other generic allegations of negligence. However, Hilton's own documents establish that it never warned that the Accubanker D62 must be turned off to avoid a fire or that the device (which is the equivalent of a common lamp) constitutes a fire risk. Additionally, BANA, as a building tenant, had no obligation or other legal duty to install a fire protection or detection system. Thus, in addition to being untimely and lacking good cause, Hilton's proposed claims are futile. Leave should be denied.

### Burden of Proof

The burden of establishing that a proposed amendment is appropriate rests with the proponent of the amendment. *Panjwani v. Holder*, 2011 WL 2470445, at *2 (N.D. Ill. June 20, 2011).

### Standard for Leave

Hilton asserts that Federal Rule of Civil Procedure 15(a) states the applicable standard for the grant of leave. Rule 15(a)(2) provides that absent consent by the opposing party, an amendment requires "the court's leave," and that the "Court should freely give leave when justice so requires." FRCP 15(a)(2). However, while leave to amend "should be freely given, that does not mean that it must always be given." *Hukic v Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). As set forth by Hilton, leave is not appropriate and justice is not served if there is "undue delay," "bad faith," "dilatory motive," "undue prejudice to the opposing party" or "futility of amendment." *Sound of Music*, 477 F.3d at 922-23. This determination is within the court's broad discretion. *Hukic*, 588 F.3d at 432.

However, the Seventh Circuit has held that there is "tension" between Rule 15(a)(2) and Federal Rule of Civil Procedure 16(b)(4), which governs scheduling orders. *Alioto v Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). Rule 16(b)(4) states that a "schedule may be modified

only for good cause and with the judge's consent." Accordingly, when leave to amend violates or will require modification of the scheduling order, the Seventh Circuit (and nearly every other federal circuit) has implemented a two-step analysis under which the moving party is required to first show "good cause." *Alioto*, 561 F.3d at 719 (affirming application of "good cause" standard to motion for leave filed after scheduling order deadline); *Edmonson v Desmond*, 551 Fed Appx. 280, 282 (7th Cir. 2014) (affirming application of "good cause" standard where deadlines for amendments as a matter of course, discovery and dispositive motions had passed). If the movant cannot meet the "good cause" standard, them leave should be denied. *Alioto,* 561 F.3d at 719-20 (affirming denial of motion for leave based on failure to meet "good cause" standard); *Trustmark Ins. Co. v Gen.l & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (same).

**ARGUMENT**

**I.       Hilton Fails to Demonstrate Good Cause.**

Here, the "good cause" standard applies. As in *Edmonson*, Hilton seeks leave after the time for amendments as a matter of course has passed and far (4 months) after the close of discovery.

Hilton may assert that the "good cause" standard does not apply because no specific deadline appears to have been set for amended pleadings in the Fire Cases. Hilton should not be allowed to evade the "good cause" standard based upon what appears to have been an oversight in a series of procedurally complex cases. Entry of a deadline for the addition of new parties and the amendment of the pleadings is mandated by Rule 16(b)(3)(A), so that "both the parties and pleadings will be fixed." FRCP 16 & Committee Notes. These deadlines are undoubtedly intended to expire well prior the close of discovery, to avoid the duplication or the re-opening of discovery. *Chapman v. First Index, Inc.*, 2014 WL 3511227, at *2 (N.D. Ill. July 16, 2014)

5

(emphasizing that the amendment deadline is typically not extended past the close of discovery). Here, discovery has been closed for over 4 months. As in *Alioto* and *Trustmark*, the time for amendments to the pleadings in the Fire Cases has undoubtedly passed, even in the absence of a specific order. 651 F.3d at 719; 424 F.3d at 553. The "good cause" standard is properly applied.

Hilton does not and cannot demonstrate "good cause" for its nearly two year delay in seeking to assert cross-claims. The primary consideration is the diligence of the party seeking the amendment. *Alioto,* 651 F.3d at 720; *Trustmark*, 424 F.3d at 553. Hilton, however, offers no explanation for the delay in bringing its Motion. Nor is one available. The facts underlying the proposed cross-claim were admittedly available to Hilton over two years ago. If anything, as set forth below, the developments of the past two years would mitigate against the filing of the proposed cross-claims. Hilton cannot show "good cause." *See Trustmark*, 424 F.3d at 553 (affirming absence of good cause where facts underlying proposed amendment were known months before the original complaint was filed); *Ryerson & Son, Inc. v Plastech Engineered Prods., Inc.*, 2003 U.S. Dist. LEXIS 8149, at *2 (N.D. Ill May 12, 2003) (denying leave to amend where defense was known to a party at the start of the case but was not advanced for well over a year).

Hilton's allegedly promptly seeking leave after retaining new counsel does not constitute "good cause." It is well established that retention of new counsel does not constitute acceptable grounds to file a tardy amendment. *See Ibrahim v Old Kent Bank*, 2000 U.S. Dist. LEXIS 2676, at *7 (N.D. Ill. Feb. 25, 2000)("[p]laintiff cites no authority to support his argument that retaining new counsel gives him free reign to file an amended complaint"); *Ryerson*, 2003 U.S. Dist. LEXIS 8149, at *2 ("new counsel are always expected to take a case 'warts and all' . . . so that any opportunity to replead would have to be supported by a showing of good cause"). The

6

retention of new counsel does not allow Hilton a re-do. There is not "good cause" for the amendment.

## II. Leave to Amend Is Also Properly Denied Under Rule 15(a).

Leave also should be denied under Rule 15(a), in the event that it is necessary to evaluate those factors.

### A. Hilton's Motion Invokes Undue Delay.

Hilton's requested amendment also should be denied on the grounds of undue delay. While delay alone may not justify denying a motion to amend, "the longer the delay, the greater the presumption against granting leave to amend." *Soltys v Costello*, 520 F.3d 737, 743 (7th Cir. 2008). "Undue delay" has frequently been found by this Court and this Circuit when leave to amend is sought at or after the close of discovery. *See e.g., Kuhn v United Airlines*, 2012 U.S. Dist. LEXIS 116389, at *7-8 (N.D. Ill. Aug. 17, 2012) (denying leave to amend sought just before the close of discovery). Further, "undue delay" has often been found where the facts underlying the proposed amendment were previously known to the movant. *Soltys*, 520 F.3d at 744 (denying leave to amend sought 14 months after the original complaint, after the close of discovery and that sought to add claims that could have been brought with the original complaint); *Hukic*, 588 F.3d 432 (leave to amend denied where it was sought three days before the close of fact discovery and the proposed amendment was based on information "available long before he sought leave to amend."); *Coleman v Ramada Hotel Operating Corp.*, 933 F.2d 470, 473 (7th Cir. 1991) (affirming denial of leave brought at the close of discovery)

Here, leave is sought nearly two years after Hilton's Answer was filed and after the close of fact discovery on liability. Further, the proposed amendment was clearly known and

7

"available long before Hilton sought leave to amend." A finding of "undue delay" is warranted and the Motion should be denied on that basis.

   B. <u>Hilton's Motion Involves Bad Faith/Dilatory Motive.</u>

There is strong circumstantial evidence of, at least, dilatory motive.[4] Hilton has serially changed defenses throughout the course of the litigation. Hilton also changed counsel, after the close of fact discovery. Now, Hilton seeks to add a new, but previously known, defense that undoubtedly will further delay the proceedings. These factors also strongly weigh towards denying the Motion.

   C. <u>Prejudice Will Result if Hilton's Motion is Granted.</u>

Hilton claims no prejudice will result from the proposed amendment, because no additional discovery will be required. Initially, there is no guarantee that Hilton will not again reverse course and seek more discovery. Indeed, the history of these Suits indicates that this is exactly what will occur. Moreover, adding these claims, which Hilton will then undoubtedly seek to add in several of the other Fire Suits, will undoubtedly delay the cases, create procedural difficulties, introduce additional experts and potentially preclude consolidation for a common trial. It is clear that allowing the amendments at this late stage will cause BANA (and the Fire Suit plaintiffs) prejudice and additional and unnecessary litigation costs.[5] *See Perrian v O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) *quoting Campbell v Ingersoll Milling Mach. Co.*,

---

[4] BANA has no specific evidence or belief of bad faith or a dilatory motive on the part of either set of counsel for Hilton.

[5] Hilton also asserts no prejudice because its claims are identical to those asserted by the Fire Suit plaintiffs. While Hilton's claims are largely copied from the Fire Suit plaintiffs' pleadings, those plaintiffs' claims were pled prior to the completion of discovery and premised upon allegations, as opposed to the facts that are now available. It is uncertain whether the Fire Suit plaintiffs will persist with those claims. Regardless, Hilton will require its own experts and proofs, which will undoubtedly add additional expense and delay.

893 F.2d 925, 927 (7th Cir. 1990) (stating that "Eleventh hour additions . . . [are] bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants" in denying leave to amend); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995) (emphasizing that motion to amend is considered unduly delayed and prejudicial if brought after the close of discovery).

      D.      <u>Hilton's Claims Are Futile.</u>

In this Circuit, an amendment is futile if it will not survive a motion for summary judgment. *Sound of Music*, 477 F.3d at 922-23; *Bethany Pharmacal Co. v QVC, Inc*., 241 F.3d 854, 861 (7th Cir. 2001).[6] BANA does not (and is not required to) attempt to establish a right to summary judgment in this Response. However, summary judgment in BANA's favor on Hilton's proposed claims is likely.

First, Hilton asserts negligence by BANA in failing to turn off the Accubanker D62 UV light at Teller Station No. 2. The Accubanker D62 is, in essence, a lamp. Hilton thus claims that BANA was negligent by leaving a lamp on over the weekend. They do not and cannot support this claim, absent a warning to the contrary. Yet, the only relevant statement in the D62 Users Guide reads, "To extend the life of the UV lamps, we recommend the user to turn the unit OFF when not in use." (*See* Exhibit A.) There is no warning that leaving the lamp on will cause a fire or that the D62 is otherwise a fire hazard. This failure to warn dooms Hilton's claim.

Next, Hilton asserts negligence by BANA for failing to have an adequate fire detection or protection system in place. Hilton does not and cannot establish BANA's obligation, as a

---

[6] There is authority in this Circuit that an amendment is futile only if it cannot survive a motion to dismiss and that the summary judgment standard only applies to cases in the summary judgment phase. *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 233 (S.D. Ill. 2011). Those cases, however, involve amendments sought at an earlier stage in the proceedings. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Fact discovery on liability has closed in the Fire Suits, which places these cases in the orbit of summary judgment. The summary judgment standard is thus appropriately applied to the futility analysis here.

building tenant, to install a fire detection or protection system. *See e.g.* Chicago Municipal Code §§ 13-196-205, 15-16-220, 13-76-040 (detailing fire protection responsibilities of building owners and in common areas). There is no legal duty or other requirement that BANA put a fire detection or protection system in place.

Moreover, there is no evidence that any such failure by BANA caused damage. To prove this claim, Hilton will need expert testimony indicating that their preferred fire detection system would have alerted the Chicago Fire Department ("CFD") earlier, that the CFD would have arrived earlier and that there is an identifiable amount of additional incremental damage caused by the purported delay. This is a heavy, if not impossible burden.

It is very likely that BANA would win summary judgment on Hilton's proposed claims. Denial of the Motion on the grounds of futility is thus appropriate. *See Sound of Music*, 477 F.3d at 923-24 (affirming denial of leave as futile based on inability to survive summary judgment); *Simonian v Irwin Indus. Tool Co.*, 2011 U.S. Dist. LEXIS 4538, at *17 (N.D. Il. Jan. 18, 2011) (same).

## CONCLUSION

For the foregoing reasons, the Court should issue an Order denying Hilton Trading Corp's Motion for Leave and grant such other and further relief as the Court deems just and proper.

Dated: October 28, 2014            Respectfully submitted,

**BRYAN CAVE LLP**

By:   /s/ *Brittany D. Kozal*
    Brent W. Vincent
    brent.vincent@bryancave.com
    Brittany D. Kozal
    brittany.kozal@bryancave.com
    161 North Clark Street
    Suite 4300
    Chicago, Illinois 60601
    (312) 602-5000 - Telephone
    (312) 698-7259 - Facsimile

    *Attorneys for Bank of America, N.A.*

## **CERTIFICATE OF SERVICE**

  The undersigned herby certifies that on this 28th day of October, 2014, a true and correct copy of the foregoing document will be delivered to counsel of record by operation of the Court's CM/ECF system.


                /s/ Brittany D. Kozal